tion issued against the bail, yet the plaintiff may charge the principal, unless it be shown that he was satisfied by the execution against the bail. Whiteacres v. Hamkinson, Cro. Car. 75. Two are jointly and severally bound, and judgment had against one. In debt against the other, he pleaded that the first being in execution on a ca. sa. the sheriff voluntarily let him go at large; but adjudged that the creditor may take out execution against the other; for execution without satisfaction is no bar, though the sheriff suffered him to escape voluntarily, so as plaintiff is entitled to an action against the sheriff. But if he let him go by license of the creditor, then the other had been discharged, and it might have been pleaded.

WATSON (SUMMERS v.). See Case No. 13,-605.

## Case No. 17,290.

### WATSON et al. v. TAPSCOT.

[Cited in Addison v. Duckett, Case No. 77. Nowhere reported; opinion not now accessible.]

WATSON (THOMAS v.). See Case No. 13,-913.

WATSON (UNITED STATES v.). See Cases Nos. 16,651 and 16,652.

WATSON (WILSON v.). See Case No. 17,-847.

WATSON, The THOMAS. See Case No. 13,-933.

## Case No. 17,291.

### WATT v. POTTER.

[2 Mason, 77.] [1]

Circuit Court, D. Rhode Island. June Term, 1820.

TROVER—EVIDENCE OF CONVERSION—MASTER OF VESSEL—AUTHORITY—PARTIAL SALE OF CARGO — DAMAGES FOR CONVERSION — DEDUCTION OF DUTIES.

1. In trover, a mere demand and refusal is not in all cases evidence of a conversion. Where the demand is made by an agent, and the refusal is for defect of authority in the agent, or for a refusal to show his authority, it is not evidence of a conversion. Aliter where there is no request to see the authority, and the refusal to deliver the property turns on other distinct grounds.

[Cited in Louisville & N. R. Co. v. Lawson, 88 Ky. 500, 11 S. W. 511; Page v. Crosby, 24 Pick. 216.]

2. A master of a ship loaded on freight, and having no consignment of the cargo, has no right to pledge or sell any part of the cargo at an intermediate port, short of the port of destination, except for necessary repairs and expenses, to enable him to perform the voyage. If he break up the voyage at an intermediate port, he has no authority to sell any part of the cargo to pay for advances to him to repair the ship for a new voyage, or to pay seamen's wages.

3. Where goods are landed at such intermediate port, upon the ground of necessity, for the purpose of being re-exported, (they being prohibited by law from importation) on payment of duties, and they are there tortiously converted, the wrong doer has no right to a deduction from the damages, of the amount of the duties which would have become payable on the goods, if regularly imported, but the rule of damages is the market value of the goods at the time of the conversion.

[Cited in Bourne v. Ashley, Case No. 1,699.]

[Cited in Dent v. Chiles. 5 Stew. (Ala.) 383; Ripley v. Davis, 15 Mich. 80; Salt River Canal Co. v. Hickey (Ariz.) 36 Pac. 172; Walker v. Borland, 21 Mo. 292.]

Trover for two hundred and three hogsheads of rum. The plaintiff [Robert Watt], a merchant of Jamaica, in March, 1819, shipped under a charter party on board of the British brig Fame, of Liverpool (James Handy, master), a large quantity of rum, on a voyage to Quebec, in Canada, consigned to Messrs. Ervin, M'Knight & Co. of that place, for sale. The brig, by the charter party, was to go from Jamaica to Quebec, and thence to return to Jamaica. The charter party stipulated for the payment of the freight of the outward voyage in advance, to the amount of £400 sterling. The vessel, after sailing on the voyage, put into Charleston in South-Carolina, in distress, and after undergoing repairs there, resumed her voyage, and afterwards put into Newport, Rhode-Island, under the same pretence. Here the master acting, as was suggested, with fraudulent intentions, broke up the voyage, procured a survey of the brig, and under this survey, which was without the sanction of any public authority, she was reported unseaworthy, and as such was sold for a trifling sum at public auction, and bought in by the defendant [Robinson] Potter, as he suggested, for the master, and soon afterwards she was refitted by the master, and sailed under his command on a new voyage to Wilmington in North-Carolina. On her arrival at Newport, as the importation of goods from a British colony, in a British ship, was prohibited by the late act of congress, the cargo was landed and warehoused under the authority and keys of the government, in the warehouse of the defendant, whom the master appointed his agent, and to whom he consigned the vessel and cargo, without the knowledge of the owners. The defendant acted as the agent and adviser of the master in all the subsequent proceedings. Afterwards, on the 3d of August, 1819, the master procured an entry at the custom-house, of part of the cargo, and among other things, of 36 puncheons of rum, a part of the plaintiff's shipment, for the purpose of paying the alleged expenses out of the proceeds, after deducting the duties due thereon. This portion of the cargo so entered, was afterwards sold at public auction, and the nett proceeds, after all deductions. amounting to about $2,-900, came into the hands of the defendant, who made advances from time to time, to

---

[1] [Reported by William P. Mason, Esq.]